GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
TALITHA B. GRAY, ESQ.
Nevada Bar No. 9040
Email: tgray@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
[Proposed] Attorneys for Debtors

E-Filed 3/1/10

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

In re:

BLACK GAMING, LLC

☐ Affects this Debtor.
☒ Affects all Debtors.
☐ Affects VIRGIN RIVER CASINO CORPORATION
☐ Affects B & BB, INC.
☐ Affects R. BLACK, INC.
☐ Affects RBG, LLC
☐ Affects CASABLANCA RESORTS, LLC
☐ Affects OASIS INTERVAL OWNERSHIP, LLC
☐ Affects OASIS INTERVAL MANAGEMENT, LLC
☐ Affects OASIS RECREATIONAL PROPERTIES, INC.

Case No.: BK-10-13301-BAM; Chapter 11
Jointly Administered with:

| | |
|---|---|
| 10-13303 | Virgin River Casino Corporation |
| 10-13305 | B & BB, Inc. |
| 10-13306 | R. Black, Inc. |
| 10-13307 | RBG, LLC |
| 10-13309 | Casablanca Resorts, LLC |
| 10-13310 | Oasis Interval Ownership, LLC |
| 10-13311 | Oasis Interval Management, LLC |
| 10-13312 | Oasis Recreational Properties, Inc. |

Date: March 3, 2010
Time: 9:30 a.m.
Courtroom #3

### DECLARATION OF SEAN P. MCKAY IN SUPPORT OF EMERGENCY APPLICATION FOR ORDER AUTHORIZING MAINTENANCE OF PREPETITION CASH MANAGEMENT SYSTEM AND MAINTENANCE OF PREPETITION BANK ACCOUNTS

I, Sean P. McKay, hereby declare as follows:

1.   I am over the age of 18 and mentally competent. I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so. I make this declaration in support of the Debtors' <u>Emergency Application For Order Authorizing Maintenance Of Prepetition Cash Management System And Maintenance Of Prepetition Bank Accounts</u> (the "Application").[1]

---

[1] Unless otherwise expressly stated herein, all undefined, capitalized terms shall have the meaning ascribed to them in the Application.

773094_2.doc

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

2. My involvement with the Debtors began in July of 2005. From July of 2005 through January of 2008, I served as Corporate Controller to Virgin River, RBG, and BBB. Since January of 2008, I have served as the Debtors' Chief Accounting Officer and most recently as the Debtors' Chief Financial Officer.

3. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' various business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

4. To manage their businesses efficiently and seamlessly, the Debtors utilize a centralized cash management system (the "Prepetition Cash Management System") to collect and transfer funds generated by their operations and disburse those funds to satisfy the obligations required to operate their businesses. Attached hereto as Exhibit "1" are diagrams illustrating the Prepetition Cash Management System as it applies to the Debtors.

5. As a result of the bank failures in 2008, and prior to the increases in the limitations on federally insured funds, out of an abundance of caution, the Debtors opened accounts at additional financial institutions to ensure that should one bank fail, the Debtors would have sufficient funds to meet their immediate operating needs, such as payroll.

6. Provided the recent stabilization of the banking industry and the increased limitations on federally insured funds, the Debtors propose to close the following accounts within five (5) business days of the Petition Date and to transfer all such funds to the Debtors' concentration account at Nevada State Bank: (i) the two accounts at Bank of Nevada, whose approximate aggregate balance on the Petition Date is $1,161,733.31; and (ii) six of the nine accounts at Wells Fargo, whose approximate aggregate balance on the Petition Date is $99,884. It is imperative for the Debtors to presently maintain their three credit card accounts at Wells Fargo.

7. The Debtors thus propose to maintain a modified version of their Prepetition Cash Management System (the "Cash Management System") including each of their existing bank

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

773094_2.doc

2

accounts at Nevada State Bank and Bank of America, and their three credit card accounts at Wells Fargo (collectively, the "Bank Accounts") post-petition. The Bank Accounts are essential for the Debtors' continued use of the Cash Management System. The diagrams attached as Exhibit "2" to the McKay Cash Management Declaration illustrate the contemplated Cash Management System.

8.  Post-petition, the Debtors propose to retain their current Cash Management System and the Bank Accounts and Merchant Accounts which are maintained by each of the Debtors' respective banks (collectively, the "Banks"). The Bank Accounts generally include without limitation as follows: (i) main depository accounts ("General Accounts"); (ii) accounts for payment of payroll and payroll related charges ("Payroll Accounts"); (iii) accounts for payment of self-insured medical coverage claims ("Medical Coverage Accounts"); (iv) accounts to cover gaming winnings and jackpots ("Cage Accounts"); (v) accounts for the deposit and disbursement of workers' compensation funds ("Workers' Compensation Accounts"); (vi) accounts required by various administrative and regulatory bodies ("Regulatory Accounts"); (vii) accounts designated in part for the deposit of credit card payments (the "Credit Card Accounts"); and (viii) accounts related to timeshare receivables and operations (the "Timeshare Accounts").

9.  The Debtors' primary source of revenue is gaming revenues. Many of the Debtors' customers pay their bills by means of credit cards. Thus, the Debtors also have merchant accounts with various credit card companies, such as Visa, Mastercard, and Discover, which are processed through merchant accounts (the "Merchant Accounts").

10. It would take a substantial amount of time to obtain new Merchant Accounts from the credit card companies. Hence, if the Debtors are not permitted to continue to use the Merchant Accounts as Debtors-In-Possession, they could not offer their customers the service of allowing them to pay their bills by credit cards for whatever period of time it would take for the Debtors to obtain new Merchant Accounts. The absence of credit card services would materially and adversely affect the Debtors' businesses.

11. As of the Petition Date, customer drafts relating to such credit card accounts in various stages of collection. To obviate the disruption that might otherwise occur in the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

773094_2.doc

3

collection process, it is in the best interest of the Debtors' estates to be authorized to continue to their ordinary course credit card transaction, rather than to close these accounts and then open new accounts.

12. To require the Debtors to dismantle or alter their Cash Management System would result in an enormous expenditure of time and resources and would cause immeasurable harm to the Debtors' ability to efficiently and effectively manage their operations, as well as to reorganize.

13. The Debtors' Cash Management System is an ordinary, usual, and important business practice. The Cash Management System enables the Debtors to maintain control over the receipt and disbursement of cash, and to generate timely and accurate financial information critical to managing during the pendency of these Chapter 11 Cases. If these practices and procedures are disrupted, the Debtors' efforts to reorganize may be jeopardized.

14. The Debtors' Cash Management System is similar to those commonly employed by corporate enterprises of comparable size and complexity. Many corporate enterprises use these cash management systems because such systems provide numerous benefits. Among the most important of these benefits is the ability to control corporate funds and ensure cash availability, to reduce administrative expenses, and to have easy access to timely and accurate financial information.

15. Establishing a new cash management system would entail significant delay and cost. At a minimum, substantial disruptions to the Debtors' businesses would occur by, among other things, delaying the payments to vendors, lessees, employees and customers. This would in turn harm trade creditors, consumer confidence, and employee loyalty, and would hinder the Debtors' chances to successfully reorganize.

16. Further, maintaining the Cash Management System would not prejudice any party. The Debtors will maintain strict records with respect to all transfers of cash so that they are able to readily account for all transactions. The Debtors' maintenance of their existing Cash Management System is not only of critical importance to the Debtors' business operations, but is also in the best interest of the Debtors' estates and their creditors.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

773094_2.doc

4

17. To require the Debtors to close Bank Accounts and Merchant Accounts and to open new Bank Accounts and Merchant Accounts would cause substantial disruption and delay in the Debtors' ongoing operations and would materially and adversely affect the Debtors' businesses. To avoid such problems and to ensure as smooth a transition into Chapter 11 as possible, it is imperative that the Debtors be permitted to continue using their Bank Accounts and Merchant Accounts.

18. Because the Debtors process large amounts of cash on a daily basis to facilitate the unique needs of their casino, hotel, timeshare, and related business, any disruption to Cash Management System or Bank Accounts would seriously harm the Debtor and their estates. In short, the Debtors will be unable to escape the immediate and irreparable harm that will follow should the Debtors be precluded from maintaining their Cash Management System.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this 1st day of March, 2010.

_/s/ Sean P. McKay_
SEAN P. MCKAY

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

773094_2.doc

5